UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARASH GOJCAJ | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| | : | |
| V. | : | 3:14- cv-01739-MPS |
| | : | |
| CITY OF DANBURY, CHIEF ALAN | : | |
| BAKER, in his official and individual | : | |
| capacities; DETECTIVE DAN TROMPETTA | : | |
| in his official and individual capacities. | : | |
| | : | |
| Defendants | : | May 26, 2015 |

**FIRST AMENDED COMPLAINT**

**A. INTRODUCTION**

1. This is an action to redress the deprivation under color of state law of certain rights secured to the Plaintiff under the Fourth and Fourteenth Amendments of the United States Constitution, Article I, § § 7 and 9 of the Connecticut State Constitution, as well as under principles of the common law of the State of Connecticut.

**B. JURISDICTION AND VENUE**

2. This Court has jurisdiction over Plaintiffs federal civil rights claims brought under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1343(a)(3), and it also has supplemental jurisdiction over plaintiffs state law claims pursuant to 28 U.S.C. 1367(a).

3. Venue is appropriate in the District of Connecticut pursuant to 28 U.S.C. § 1391(b)(1) and (2).

**C. PARTIES**

4. At all material times herein, the Plaintiff, **MARASH GOJCAJ** ("PLAINTIFF"), was a resident of the Town of Greenwich in the State of Connecticut.

5.  The Defendant, **CITY OF DANBURY** (hereinafter **"CITY"**), is a municipality created and existing as a political subdivision of the State of Connecticut pursuant to the laws of the State of Connecticut.

6.  As a municipality incorporated under the laws of the State of Connecticut, Defendant City had a duty to ensure adequate supervision and training of police officers to protect the Plaintiff from unlawful deprivation of his civil rights under the United States and Connecticut Constitutions.

7.  At all times material hereto, the **CITY** was responsible for the conduct of it agents, representatives, servants and/or employees, including, but not limited to the Chief of Police, and other officers of the City of Danbury Police Department.

8.  At all material times the Defendant, **ALAN BAKER** (hereinafter **"BAKER"**), was the Chief of Police for the City of Danbury, and is sued in both his official and individual capacities.

9.  Upon information and belief, Defendant **BAKER** is a resident of this Judicial District.

10.  At all material times **BAKER** acted individually and/or under color of law, to wit, under color of the State and Federal Constitutions, statutes, laws, charters, ordinances, rules, regulations, customs and/or usages of the United States, the State of Connecticut and/or the City of Danbury.

11.  At all material times herein, Defendant **BAKER**, as Chief of Police, was employed in a position of policy-making authority for the City of Danbury, and had a duty to ensure adequate supervision and training of police officers to protect the Plaintiff from unlawful deprivation of his rights under the United States and Connecticut Constitutions.

12.  The Defendant, **DAN TROMPETTA**, (hereinafter **"TROMPETTA"**) was, at all material times, a Detective and an acting police officer employed by the City of Danbury and/or

2

the Danbury Police Department, and is sued in this Complaint in both an official and individual capacity.

13.  At all times material to the allegations in this Complaint, **TROMPETTA** acted individually and/or under color of law, to wit, under color of the State and Federal Constitutions, statutes, laws, charters, ordinances, rules, regulations, customs and/or usages of the United States, the State of Connecticut and/or the City of Danbury.

14.  Upon information and belief, Defendant **TROMPETTA** is a resident of this Judicial District.

**D. STATEMENT OF FACTS**

15.  Between April of 2004 and August of 2010, Defendant **TROMPETTA** was involved in the investigation of a murder that is alleged to have taken  place in the City of Danbury on or about April 4, 2004, wherein the Victim was Zef Vulevic, the **PLAINTIFF'S** uncle.

16.  The **PLAINTIFF** became a suspect in the murder of Zef Vulevic, and was ultimately charged with murder in relation to his death in or about 2008.

17.  The **PLAINTIFF** pled not guilty to the charges levied against him in in relation to the murder of Zef Vulevic.

18.  On or about June 11, 2009, **PLAINTIFF** posted bond and was released, pending a Jury Trial, then scheduled to begin on September 7, 2010.

19.  On or about August 31, 2010, approximately one week before **PLAINTIFF's** trial was scheduled to begin, Defendant **TROMPETTA** swore an Affidavit in support of an Arrest Warrant (hereinafter "the Affidavit"), charging **PLAINITFF** with Witness Tampering, contrary to Connecticut General Statutes Section 53a-151.

20.  **TROMPETTA** claimed in the Affidavit, among other things:

a.  That on June 16, 2009, he was contacted by Stephen Nanai (hereinafter "Nanai"), who was scheduled to be a State witness against the Plaintiff at his trial; in speaking with Nanai, he learned that **PLAINTIFF** contacted Nanai by telephone and asked to meet with him in person;

b.  That on July 12,2010, the Nanai contacted him again and informed him that **PLAINTIFF** contacted Nanai once more requesting a meeting;

c.  That Nanai informed him that **PLAINTIFF** wanted to speak with him regarding his upcoming trial, stating that he had read his sworn statement to the police, and that portions of the same could be damaging to **PLAINTIFF**;

d.  That **PLAINTIFF** further asked Nanai whether he may have embellished his statement to the police, and Nanai felt that **PLAINTIFF** was trying to sway his testimony in the upcoming trial;

e.  That Nanai further provided a sworn written statement regarding the telephone conversation, wherein he explained that he and **PLAINTIFF** were old friends, and the conversation between them was casual and involved "small talk," but confirmed that **PLAINTIFF** never threatened him in any way, and never made any requests of him;

f.  That a cellular phone purportedly used by **PLAINTIFF**, was used to contact other persons, who were potential witnesses at his upcoming trial; and/or

g.  That he believed that **PLAINTIFF** attempted to induce Nanai to vary testimony he gave in a prior written statement to police, in violation of Connecticut General Statutes Section 53a-151.

21.  **TROMPETTA**, knowingly and deliberately and/or with a reckless disregard for the truth, and recklessly omitting and/or intending to omit material facts,  swore the affidavit, failing to include, among other things that:

a.  Most, if not all of the potential witnesses contacted by **PLAINTIFF**, were also friends, acquaintances and /or business associates with whom Plaintiff would naturally be expected to communicate, and that **PLAINTIFF** and Nanai spoke casually and/or communicated  many times prior to the instant described in the warrant affidavit, including via Facebook throughout 2009 and 2010;

b.  That the "witness" Stephen Nanai was arrested on drug charges when he first communicated the incident to **TROMPETTA**, and only at the behest of the police gave the written statement referred to in the warrant, after consulting with his wife who was a State Trooper, and after negotiating favorable treatment and a future Pardon Board letter of support from TROMPETTA and/or one or more of the Prosecutors in the State's Attorney's office;  and

c.  That as a result of information known to **TROMPETTA** at the time, including the fact that Nanani had a wife in law enforcement, was facing pending felony drug charges, and had asked and/or negotiated promised quid pro quo in exchange for giving a written statement, Nanai's veracity was questionable.

22.  The aforementioned material omissions, and others, were necessary to the finding of probable cause, and the Affidavit in support of the arrest warrant was designed to mislead the issuing judge by exaggerating the significance of otherwise innocent facts expressed in misleading manner and/or concealing facts material to the veracity of the

"witness" upon whose statements **TROMPETTA's** averments were based, yet left undisclosed to the issuing Magistrate.

23. Defendant **TROMPETTA** swore the aforementioned Affidavit in support of the **PLAINTIFF'S** arrest, knowing that the same contained material omissions, and averring therein with reckless disregard for the truth, that probable cause existed for the **PLAINTIFF'S** arrest on charges of Tampering.

24. Defendant **TROMPETTA** swore the aforementioned Affidavit with reckless disregard of the truth of material facts related to the incident, alleged probable cause for a Tampering charge, knowing and/or ignoring the fact that probable did not exist and/or there was reason to question the veracity of the "witness" upon whose statements the same was alleged to have been based.

25. Upon information and belief, Defendant **TROMPETTA** swore the aforementioned Affidavit with the intent to harass and punish the PLAINTIFF for personal and/or other reasons unrelated to the charge of Tampering.

26. Upon information and belief, **TROMPETTA** swore the aforesaid Affidavit with the intention of placing a general chilling effect upon **PLAINTIFF**, and in order to interfere with **PLAINTIFF's** ability to assist his trial counsel in his then upcoming murder trial.

27. On or about September 1, 2010, **PLAINTIFF** was in fact arrested, pursuant to warrant issued based on the Affidavit, and charged with Tampering With a Witness in violation of Connecticut General Statutes§ 53a-151.

28. On or about September 2, 2010, **PLAINTIFF** was arraigned before the Superior Court in Danbury, Connecticut, where he pled "not guilty," and where his bond was set at $500,000.00.

29.  **PLAINTIFF** was unable to post bond, and therefore remained incarcerated until the beginning of his Trial, and throughout all Trial proceedings.

30.  Being incarcerated just shortly before his Trial hindered **PLAINTIFF'S** ability to participate in his own defense at a crucial time, and rendered his ability to freely communicate with his Counsel regarding final preparations virtually impossible.

31.  Continued incarceration during the trial caused **PLAINTIFF** to lose the benefits he had secured by posting bond in relation to the murder trial, in accordance with the Federal and State Constitutions, and laws of the State of Connecticut.

32.  Continued incarceration during the trial caused the **PLAINTIFF** to be transported back and forth from prison on a daily basis during his trial, depriving him of adequate sleep, rest and focus, at a time when the same were essential in order for him to participate in his own defense, and fully and properly understand the proceedings.

33.  **PLAINTIFF** was forced to hire Counsel to defend him with respect to the Tampering charge and appear in court on multiple occasions during the pendency of his case.

34.  In spite of offering other similarly situated criminal defendants charged with Tampering at or around the same time receiving far more favorable dispositions, in far more egregious examples of Tampering, **PLAINTIFF** was given an offer of a  maximum possible sentence (5 years), to run consecutive to **PLAINTIFF'S** then imposed fifty (50) year sentence in connection with the Vulevic murder, and therefore, the same was rejected, and **PLAINTIFF** availed himself of his right to a Jury Trial.

35.  Upon information and belief, Defendant **TROMPETTA** participated and/or influenced pre-trial proceedings in Plaintiff's Tampering case by insisting on the continued prosecution of the **PLAINTIFF**, insisting on a disposition that involved a maximum

sentence to run consecutively to **PLAINTIFF's** 50 year sentence, providing incentives and

encouragement for Nanai to testify against the **PLAINTIFF** during the Tampering trial, all

while he continued with the State Prosecutors to withhold exculpatory and/or significant

impeachment type evidence to which the **PLAINTIFF** and his Counsel were entitled.

36.  Nanai and **TROMPETTA** testified at the **PLAINTIFF'S** Tampering Trial, in

relation to the conversations alleged to have taken place between the **PLAINTIFF** and

Nanai.

37.  Throughout his testimony**, TROMPETTA** insisted on maintaining the version of

events set forth in his Affidavit.

38.  Nanai's testimony confirmed that he informed **TROMPETTA** that no threats were

ever made by **PLAINTIFF**, and that **PLAINTIFF** did not ask Nanai to change or alter

testimony of any sort, in any way whatsoever.

39.  Nanai confirmed that **TROMPETTA** was informed that the tone of the conversation

between he and the **PLAINTIFF** was casual and friendly.

40.  Nanai confirmed that **TROMPETTA** provided him a letter in support of a State

Pardon for drug related felony convictions prior to the time he testified at the **PLAINTIFF'S**

Tampering Trial, only after Motions seeking Pardon Board records were made, and the Court

was forced to release information to the defense for its use in cross examining Nanai and

**TROMPETTA**.

41.  The State's Attorney's office in Danbury, via one or more representatives, through

and in connection with **TROMPETTA**, had discussions about assisting Nanai with a Pardon

Application prior to the time he testified at **PLAINTIFF'S** Trial related to the murder of Zef

Vulevic, and prior to the time he testified at **PLAINTIFF'S** Tampering Trial.

42.  Neither the State's Attorney's office, nor **TROMPETTA**, disclosed their agreed upon involvement in Nanani's Pardon Application, prior to either Trial, in spite of the fact that Nanai was a key witness in both Trials, and in spite of Defense Counsel's requests for disclosure of any favorable treatment or benefit given by the State to any witness.

43.  Throughout the **PLAINTIFF's** Tampering trial, from jury selection and until the jury verdict, Defendant **TROMPETTA** was present in the courtroom, made gestures, whispered remarks. and laughed during closing arguments with intent intimidate the **PLAINTIFF** and/or influence the jury.

44.  Upon information and belief, throughout the pendency of both trials, **TROMPETTA** himself, and/or via solicited aid from other members of Danbury P.D., continued to further intimidate, harass and/or vex the **PLAINTIFF**, in one or more of the following ways, including, but not limited to:

    a.  Ordering and/or otherwise causing **PLAINTIFF** to be pulled over while driving through Danbury on purely pretextual grounds;

    b.  Ordering and/or otherwise causing **PLAINTIFF's** family pulled over while driving through Danbury and/or other locations on purely pretextual grounds;

    c.  Having members of **PLAINTIFF's** family followed by police officers as they drove to and from the Danbury courthouse during **PLAINTIFF's** trials.

    d.  Affixing and/or causing to have affixed to one or more vehicles registered to the PLAINTIFF and/or **PLAINTIFF's** family, satellite tracking devices, without lawful authority, warrant, consent, or permission to so.

    e.  Upon information and belief, unlawfully entering the State of New York without lawful authority, warrant, consent, or permission to do so, in order to

affix and/or remove, or cause to affix and/or remove, satellite tracking devices to

one or more vehicles registered to the **PLAINTIFF** or the **PLAINTIFF'**s family,

45.  Upon hearing all the evidence put forth by the State, and Defense Counsel, in the

Tampering Trial, the  Jury acquitted the **PLAINTIFF**  and upon delivering its verdict of "not

guilty" to Tampering charges, the proceedings terminated in **PLAINTIFF's** favor.

46.  Upon hearing the Jury verdict, **TROMPETTA** made comments of disbelief

pertaining to the verdict, including, upon information and belief, stating  "it's not over," and

making other derogatory and inflammatory comments directed at undermining the validity of

the verdict.

47.  At no time material to the allegations contained herein did the **PLAINTIFF** tamper

with a witness as charged, or engage in any conduct that supplied the Defendants, or any of

them, with probable cause to believe the **PLAINTIFF** violated the law of the United States

or the State of Connecticut.

### COUNT 1: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
*(As to Defendant Trompetta)*

1-47.  **PLAINTIFF** repeats and realleges the allegations contained in paragraphs 1

through 47 of this Complaint, as if the same were fully set forth herein.

48.  The acts and omissions of Defendant **TROMPETTA**, as herein described, were

done and made maliciously, intentionally, and willfully, with the purpose of depriving

**PLAINTIFF** of his rights to be free from unreasonable and unlawful detentions, arrests and

seizures, and to hinder his ability to defend himself against criminal charges, all in violation

of the Fourth and Fourteenth Amendments of the United States Constitution.

49.  The acts and omissions of Defendant **TROMPETTA** as herein described, deprived

**PLAINTIFF** of his rights to be free from unreasonable and unlawful detentions, arrests and

seizures in violation of the Fourth and Fourteenth Amendments of the United States

Constitution.

50.   Defendant **TROMPETTA** knew or should have known that said actions and

omissions violated clearly established Constitutional and/or other statutory law(s).

51.   As a direct and proximate result of said actions and omissions, **PLAINTIFF** has

been caused to suffer and sustain injuries and losses, including, but not limited to:

      h.   violation of his constitutional rights;

      i.   loss of liberty;

      j.    restriction on his ability to assist his counsel during his murder trial;

      k.   having to appear in court on multiple occasions to defend against false criminal

          charges against him;

      l.   humiliation and embarrassment;

      m.  severe emotional distress, terror and fear; and/or

      n.   financial loss and harm.


**COUNT 2: VIOLATION OF ARTICLE I. §§ 7 AND 9 OF THE CONNECTICUT
CONSTITUTION**
*(As to Defendant Trompetta)*


1-47.  **PLAINTIFF** repeats and realleges the allegations contained in paragraphs

through 47 of  this Complaint, as if the same were fully set forth herein.

48.  The acts and omissions of Defendant **TROMPETTA**, were done and made

maliciously, intentionally and willfully, with the purpose of depriving **PLAINTIFF** of

his rights to be free from unreasonable and unlawful detentions, arrests and seizures in

violation of the Article I, §§ 7 and 9 of the Connecticut Constitution.

49.  The acts and omissions of Defendant **TROMPETTA**, as herein described,

deprived  **PLAINTIFF** of his rights to be free from unreasonable and unlawful

detentions, arrests and seizures, all in violation of Article I, §§ 7 and 9 of the Connecticut

Constitution.

50.  Defendant **TROMPETTA** knew or should have known that said actions and

omissions  violated clearly established Constitutional law.

51.     As a direct and proximate result of said actions and omissions,

**PLAINTIFF** has been caused to suffer and sustain injuries and losses, including, but not

limited to:

   a.  violation of his constitutional rights;

   b.  loss of liberty;

   c.  restriction on his ability to assist his counsel during his murder trial;

   d.  having to appear in court on multiple occasions to defend against false
       criminal charges against him;

   e.  humiliation and embarrassment;

   f.  severe emotional distress, terror and fear;

   g.  financial loss and harm.

**COUNT 3: ABUSE OF PROCESS**
*(As to Defendant Trompetta)*

1-47.  **PLAINTIFF** repeats and realleges the allegations contained in

paragraphs 1through 47 of  this Complaint, as if the same were fully set forth herein.

48.  The acts and omissions of Defendant **TROMPETTA**, as herein described,

12

constituted improper use of legal process against the **PLAINTIFF**, and were intended and designed to vex, annoy, threaten, intimidate, harass and otherwise place a chilling effect upon the **PLAINTIFF**.

49.   The acts and omissions of Defendant **TROMPETTA**, as herein described, were done and made with an improper purpose, to wit:

a.   to intimidate, discourage and prevent **PLAINTIFF** from defending himself in his pending murder trial;

b.   to intimidate, discourage and prevent **PLAINTIFF** from defending himself in his pending tampering trial;

c.   to retaliate against **PLAINTIFF** for electing to proceed to a jury trials where he could cross examine the witnesses against him, including Defendant **TROMPETTA;**

d.   **t**o interfere with and/or prevent **PLAINTIFF** from effectively communicating with his trial counsel during the pendency of his murder trial; and to thwart **PLAINTIFF'S** efforts to defend himself and to place a chilling effect on him throughout his trials;  and/or

e.    to otherwise scare and/or intimidate the **PLAINTIFF** and place a chilling effect upon **PLAINTIFF's** exercise of Constitutional rights.

50.  As a direct and proximate result of Defendant **TROMPETTA's** abuse of criminal process, as herein described, **PLAINTIFF** was caused to suffer and sustain injuries and losses, including, but not limited to:

a.   violation of his constitutional rights;

b.   loss of liberty;

13

    c.  restriction on his ability to assist his counsel during his murder

        trial;

    d.  having to appear in court on multiple occasions to defend against

        false criminal charges against him;

    e.  humiliation and embarrassment;

    f.  severe emotional distress, terror and fear; and/or

    g.  financial loss and harm.

## COUNT 4: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *(As to Defendant Trompetta)*

1-47.  **PLAINTIFF** repeats and realleges the allegations contained in paragraphs 1 through 47 of this Complaint, as if the same were fully set forth herein.

48.The acts and omissions of Defendant **TROMPETTA**, as herein described, were done and made maliciously, intentionally, willfully, or knowingly and with the purpose of causing **PLAINTIFF** severe emotional distress.

49.  The acts and omissions of Defendant **TROMPETTA**, as herein described, were extreme, outrageous, and atrocious, and the same are intolerable in civilized society.

50.  As a direct and proximate result of Defendant **TROMPETTA's** actions and omissions, **PLAINTIFF** suffered severe emotional distress, humiliation, embarrassment, fear, loss of appetite, loss of sleep, depression and loss of enjoyment and quality of life.

## COUNT 5: MALICIOUS PROSECUTION
### *(As to Defendant Trompetta)*

1-47.  **PLAINTIFF** repeats and realleges the allegations contained in paragraphs 1 through 47 of  this Complaint, as if the same were fully set forth herein.

48.  By his acts and omissions, as herein described, Defendant **TROMPETTA**, maliciously instigated, facilitated, and/or otherwise contributed to the precipitation of criminal proceedings against **PLAINTIFF**, without probable cause.

49.  Said criminal proceedings terminated in **PLAINTIFF's** favor as herein described.

50.  As a direct and proximate result of said actions and omissions, **PLAINTIFF** has been caused to suffer and sustain injuries and losses, including, but not limited to:

a.  violation of his constitutional rights;

b.  loss of liberty;

c. restriction on his ability to assist his counsel during his murder trial;

d. having to appear in court on multiple occasions to defend against false criminal charges against him;

e. humiliation and embarrassment;

f. severe emotional distress, terror and fear; and/or

g. financial loss and harm.

## COUNT 6: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### *(As to Defendants City and Baker)*

1-47.  **PLAINTIFF** repeats and realleges the allegations contained in paragraphs

15

1 through 47 of  this Complaint, as if the same were fully set forth herein.

48.  At all material times herein, Defendants **CITY** and **BAKER** had developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of citizens, residents and visitors to the City of Danbury.

49.  Such policies, practices and actions were the moving force behind, and a direct and proximate cause of, the unconstitutional conduct of Defendant **TROMPETTA,** as hereinbefore described, the same resulting in the violation of **PLAINTIFF's** federal and state constitutional rights, and accompanying losses hereinbefore specified.

50.  These de facto policies, practices, and/or  customs included, but were not limited to:

a. failure to adopt policies, procedures and/or practices that would prevent police officers from arresting and/or seeking arrest warrants without probable cause, omitting material truths in support of applications for arrest warrants, and retaliating against subjects of their investigations and arrests for pursuing their rights by way of a jury trial, when the need for such training/supervision, discipline and/or control was obvious;

b. failure to adopt policies, procedures and/or practices that would prevent police officers from to utilizing their office to interfere with and/or retaliate against persons exercising their rights under the federal and state constitutions, when the need for such training/supervision, discipline and/or control was obvious;

c. failure to adequately train, supervise, discipline, and/or otherwise control police officers who exhibited tendencies to arrest and/or seek arrest warrants without probable cause, omit material truths in support of applications for arrest warrants, and retaliate against subjects of their investigations and arrests for pursuing their rights by way of a jury trial when the need for such training/supervision, discipline and/or control was obvious;

d. failure to adequately train, supervise, discipline, and/or otherwise control police officers who exhibited tendencies to utilize their office to interfere with and/or retaliate against persons exercising their rights under the federal and state constitutions when the need for such training/supervision, discipline and/or control was obvious;

16

e. failure to reprimand, discipline or otherwise take action against police officers engaged in unlawful conduct and violation of persons' rights under the federal and state constitutions; despite having prior notice that its officers engaged in such conduct.

51.  All of the aforementioned policies of Defendants **CITY** and **BAKER** served and/or encouraged an environment conductive to the violation of the Constitutional rights of persons, including **PLAINTIFF**, so as to independently or in combination, constitute the moving force behind the violation of the Constitutional rights of the Plaintiff.

52.  As a direct and proximate result of such wrongful policies, practices and customs of Defendants **CITY** and **BAKER**, **PLAINTIFF** has been caused to suffer and sustain injuries and losses, including, but not limited to:

a.  violation of his constitutional rights;

b.  loss of liberty;

c.  restriction on his ability to assist his counsel during his murder trial;

d. having to appear in court on multiple occasions to defend against false criminal charges against him;

e.  having to withstand humiliation and embarrassment;

f.  having to experience severe emotional distress, terror and/or fear; and/or

g. suffering financial loss and harm.

**WHEREFORE, PLAINTIFF** prays that this Court:

1. Assume jurisdiction over this cause of action;

2. Award him the costs of this action and a reasonable attorney fees;

3. Award him costs and reasonable attorney's fees pursuant to 42 U.S.C. §1988,with respect to counts brought under 42 U.S.C. §1983;

17

4. Award him compensatory damages;

5. Award him punitive damages; and/or

6. Enter such other and further relief as this Court deems just and proper, and or which

law and equity may afford.

THE PLAINTIFF,<br>
MARASH GOJCAJ

BY_____l.s./ <i>Stephan Seeger</i>_____<br>
Stephan Seeger, Esq. (19234)<br>
Law Offices: Stephen J. Carriero, LLC<br>
810 Bedford Street, Suite #3<br>
Stamford, CT  06901<br>
Tel: (203) 273-5170<br>
Fax: (203) 357-0608<br>
E-mail: seegerkid2@aol.com

<b><u>CERTIFICATE OF SERVICE</u></b>

I, Stephan Seeger, hereby certify that on May 26, 2015, a copy of the foregoing Amended

Complaint, was filed electronically, and served by mail on anyone unable to accept electronic

filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing

system or by mail to anyone able to accept electronic filing as indicated on the Notice of

Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

_l.s./_<i>Stephan E. Seeger</i><br>
Stephan Seeger, Esq. (19234)<br>
Law Offices: Stephen J. Carriero, LLC<br>
810 Bedford Street, Suite #3<br>
Stamford, CT  06901<br>
Tel: (203) 273-5170<br>
Fax: (203) 357-0608<br>
E-mail: seegerkid2@aol.com