UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARASH GOJCAJ,

    Plaintiff,

v.

DAN TROMPETTA,

    Defendant.

No. 3:14–cv–1739 (MPS)

**MEMORANDUM AND ORDER**

Plaintiff Marash Gojcaj brought this civil rights action arising from the State of Connecticut's unsuccessful prosecution of him for witness tampering. The sole remaining defendant, Detective Dan Trompetta, filed a Motion for Summary Judgment (ECF No. 55), seeking to dismiss the final count—malicious prosecution—remaining in Gojcaj's second amended complaint. (ECF No. 37.) For the reasons stated below, I GRANT the defendant's Motion for Summary Judgment.

**I.    Background**

A.  Facts[1]

Gojcaj was charged with the 2004 murder of Zef Vulevic in 2008. (ECF Nos. 55-2 at ¶2; 60-2 at ¶2.) The plaintiff pled not guilty to the murder charge and was released from custody pending trial. (ECF Nos. 55-2 at ¶ 3; 60-2 at ¶ 3.) The murder trial was scheduled to commence on September 7, 2010. (ECF Nos. 55-2 at ¶ 4; 60-2 at ¶ 4.)

On August 31, 2010, Detective Trompetta "submitted an Affidavit and Application for an Arrest Warrant against [Gojcaj], charging him with [w]itness [t]ampering" in violation of Conn. Gen. Stat. § 53a-151. (ECF Nos. 55-2 at ¶ 5; 60-2 at ¶ 5.) In that affidavit, Trompetta stated the

---

[1] The facts are taken from Trompetta's' Local Rule 56(a)(1) Statement (ECF. No. 55-2) and Gojcaj's Local Rule 56(a)(2) Statement (ECF No. 60-2). The facts are undisputed unless otherwise indicated.

1

following: (1) Stephen Nanai, a prosecution witness in the murder trial, contacted Trompetta on June 16, 2009; (2) Nanai informed Trompetta that Gojcaj had contacted him by telephone and, during that phone conversation, Gojcaj asked to meet him in person, which Nanai declined to do; (3) on July 12, 2010, Nanai contacted Trompetta again and informed Trompetta that Gojcaj had again contacted him, also on July 12, 2010, requesting an in-person meeting; (4) Nanai reported to Trompetta that during that conversation, Gojcaj told Nanai he wanted to speak to Nanai about the murder trial, that Gojcaj had read Nanai's sworn statement to the police, and that portions of the statement could be damaging to Gojcaj; (5) Gojcaj asked Nanai whether he had embellished his statement to the police and wanted assurances from Nanai that he would not be damaging to Gojcaj if called to testify during the trial; (6) Nanai told Trompetta that he felt that Gojcaj was attempting to sway his trial testimony; (7) Nanai provided a sworn written statement regarding these telephone conversations with Gojcaj; (8) in that statement, Nanai also stated that he and Gojcaj were "old friends," that the conversation was casual, included small talk, and that Gojcaj never threatened Nanai and "made no outright" requests of Nanai; (9) the same cell phone Gojcaj used to contact Nanai was also used to contact other state witnesses; and (10) Trompetta believed Gojcaj was attempting, unlawfully, to induce Nanai to alter his testimony. (ECF Nos. 55-2 at ¶ 6; 60-2 at ¶ 6; *see also* ECF No. 55-4 at 5.)

In his affidavit attached to the warrant application, Trompetta "quoted verbatim the sworn written statement provided by Nanai on August 30, 2010, in which Nanai described the nature of the calls he had received from Marash Gojcaj." (ECF Nos. 55-2 at ¶ 7; 60-2 at ¶ 7) (internal quotation marks and citations to the record omitted.) In the quoted statement, Nanai stated: (1) that Gojcaj informed Nanai that he wanted to "talk . . . about his upcoming trial,"; (2) that Gojcaj told Nanai that he had "read [Nanai's 2007 statement,] and it was the only one that was damaging to

him"; (3) that he asked Nanai if Nanai had "maybe embellished in his statement"; and (4) that he said he "just wanted to make sure that if [Nanai] got called to testify, [he] wouldn't say anything that would be damaging to [Gojcaj]." (ECF Nos. 55-2 at ¶ 9; 60-2 at ¶ 9) (quoting ECF No. 55-5) (internal quotation marks omitted). Nanai, in his sworn statement, stated that he "felt like maybe [Gojcaj] was trying to lead me but made no threats." (*Id.*) (internal quotation marks omitted.) In his affidavit, Trompetta also included "telephone records obtained by court order [that] corroborated Nanai's descriptions as to time and place for the phone calls from plaintiff, as well as those to other prosecution witnesses [Gojcaj] had contacted." (ECF Nos. 55-2 at ¶ 10; 60-2 at ¶ 10.)

Gojcaj's second amended complaint asserts that Trompetta knowingly made five omissions in his affidavit that were allegedly material to the probable cause determination. (ECF Nos. 55-2 at ¶ 12; 60-2 at ¶ 12.) These were: (1) that "most, if not all of the potential witnesses" Gojcaj contacted were friends, acquaintances, or business associates "with whom [Gojcaj] would naturally be expected to communicate"; (2) that Nanai "informed Trompetta that Gojcaj did not ask him to change or alter testimony of any sort, in any way whatsoever"; (3) that Nanai also "informed Trompetta that the tone of the conversation between him and the plaintiff was casual and friendly"; (4) that Nanai, who was facing drug charges when he first communicated the incident to Trompetta, provided the written statement quoted in Trompetta's warrant affidavit in exchange for Trompetta's promise that he and representatives from the State's Attorney's Office would submit letters to the Pardon Board on behalf of Nanai; and (5) that Trompetta was aware that Nanai's "veracity was questionable" because Nanai's wife was a state trooper, Nanai was facing pending charges in Danbury, and he "had asked for and/or negotiated promised quid pro quo in exchange for giving a written statement." (ECF No. 37 at ¶ 21.) The plaintiff claims that

Trompetta omitted these facts to mislead the judge reviewing the warrant application (*id.* at ¶¶ 22, 23), to "plac[e] a general chilling effect" on Gojcaj, and to interfere with Gojcaj's ability to defend himself in the murder trial. (*Id.* at ¶ 26.)

On September 1, 2010, Gojcaj was arrested pursuant to a warrant for tampering with the state's trial witnesses. (ECF No. 37 at ¶ 27.) Gojcaj was arraigned on September 2, 2010, and pled not guilty to the tampering charge. (ECF No. 37 at ¶ 28.) The presiding judge set Gojcaj's bond at $500,000.00. (*Id.*) Gojcaj could not post the required amount and, as a result, remained incarcerated throughout the subsequent proceedings relating to his murder and tampering charges, which were tried separately. (*Id.* at ¶ 29.) A jury convicted Gojcaj on his murder charge on November 5, 2010,[2] and Gojcaj was sentenced to 50 years imprisonment. (*Id.* at ¶ 34.) A jury acquitted Gojcaj of tampering on November 20, 2011.[3] (ECF No. 37 at ¶ 45.)

B. Procedural History

Gojcaj filed a civil rights complaint against multiple defendants on November 20, 2014. (ECF No. 1.) The eight-count complaint asserted claims against Trompetta in his individual and official capacities, Danbury Police Chief Alan Baker, in his individual and official capacities, and the City of Danbury. (*Id.*) On April 10, 2015, the defendants filed a motion to dismiss, arguing that Gojcaj's claims were time-barred or, in the alternative, failed to state a claim for relief. (ECF No. 12.) On May 26, 2015, Gojcaj simultaneously filed a memorandum in opposition to the defendants'

---

[2] The Amended Complaint does not state the actual date on which Gojcaj was convicted of murder. Nonetheless, this Court may take judicial notice of filings in other litigation. *See, e.g.*, *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish a fact of such litigation and related filings."). Defendants attached the case information sheet from Gojcaj's murder trial to their motion to dismiss. (ECF No. 21.) The case sheet indicates that Gojcaj was convicted on the murder charge on November 5, 2010. Gojcaj does not dispute this date in his briefing.

[3] Gojcaj does not state the date of acquittal in the second amended complaint, but the parties do not dispute in their memoranda that this date is correct.

motion to dismiss (ECF No. 16) and an amended complaint. (ECF No. 17.) Because Gojcaj filed this amended complaint, the Court denied Defendants' motion to dismiss without prejudice. (ECF No. 18.) The amended complaint asserted six counts: (1) malicious prosecution under the Fourth and Fourteenth Amendments, (2) malicious prosecution in violation of Article One, Sections Seven and Nine, of the Connecticut Constitution, (3) abuse of process, (4) intentional infliction of emotional distress, (5) malicious prosecution under Connecticut law, and (6) a claim of supervisory and municipal liability against Chief Baker and the City of Danbury. On June 16, 2015, Defendants filed a second motion to dismiss (ECF No. 20), which I granted in part and denied in part. (ECF No. 34.) Counts Two, Three, Four, Five, and Six were dismissed with prejudice, and the City of Danbury and Chief Baker were dismissed as defendants in this matter. (*Id.*)

I also offered Trompetta the opportunity to file a supplemental brief as to whether the amended complaint failed to state a plausible claim for relief in Count One because it failed to suggest that Trompetta lacked probable cause that Gojcaj's had committed witness tampering when he signed the warrant affidavit. (ECF No. 34 at 30.) Trompetta instead filed a new motion to dismiss (ECF No. 35), but Gojcaj filed a second amended complaint in response, so Trompetta's motion to dismiss was denied as moot. (ECF Nos. 37, 38.) Trompetta then filed an answer to the second amended complaint. (ECF No. 39.) On November 30, 2016, Trompetta filed this motion for summary judgment. (ECF No. 55.)

## II. Discussion

The remaining claim in the second amended complaint asserts a federal law claim against Trompetta in his individual capacity for malicious prosecution under 42 U.S.C. Section 1983.

A. <u>Legal Standard</u>

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id.* If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted).

An issue of fact is "material" if "it might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000) (internal citation and quotation marks omitted). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal citation and quotation marks omitted). On summary judgment, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013) (internal citation and quotation marks omitted).

B. <u>Analysis</u>

Trompetta asserts three reasons that summary judgment should be granted on the malicious prosecution claim. First, he argues that the allegations are insufficient as a matter of law to assert

a plausible claim for relief. (ECF No. 55-1 at 2.) Second, he asserts that there is no dispute that Trompetta's warrant application established probable cause for Gojcaj's arrest, or at least provided arguable probable cause, which would entitle Trompetta to qualified immunity. (*Id.*) Finally, Trompetta argues that he relied on the opinions of the two prosecutors in filing the affidavit and application for a warrant. (*Id.* at 3.) Because I agree that the warrant application established probable cause and find that any alleged omissions were immaterial, I need not address the first and third arguments.

### 1. Malicious Prosecution

To prevail in a Section 1983 malicious prosecution claim, Gojcaj must show

> a violation of his rights under the Fourth Amendment[] and must establish the elements of a malicious prosecution claim under state law. In Connecticut, the elements of a malicious prosecution claim are that (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.

*Turner v. Boyle*, No. 3:13–cv–616 (SRU), 2015 WL 4393005, *16 (D. Conn. July 15, 2015) (citations and internal quotation marks omitted). "[T]he issuance of a facially valid warrant by a neutral magistrate creates a presumption of the existence of probable cause." *Johnson v. Ford*, 496 F. Supp. 2d 209, 213 (D. Conn. 2007). This presumption can "only be overcome by presenting evidence that the officer knowingly and recklessly made a false statement in his [or her] affidavit or omitted material information clearly critical to the probable cause determination." *Id.* A Superior Court judge reviewed Trompetta's warrant application, which included the affidavit, and determined that it stated probable cause. (ECF Nos. 55-2 at ¶ 17, 60-2 at ¶ 17.) So the presumption applies, and the plaintiff alleges only that Trompetta omitted material information in his affidavit. (ECF No. 34 at 20.)

7

*2. Probable cause at the time of the warrant application*

The plaintiff has failed to establish that there are any genuine disputes of material facts: the undisputed facts show that the defendant had probable cause when he filled out the affidavit and that any omissions were immaterial. "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers[.]" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Under both federal and Connecticut law, probable cause to arrest exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Zalaski v. City of Hartford*, 723 F.3d 382 at 390–91 (2d Cir. 2013) (internal citation and quotation marks omitted). "[U]nder some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause." *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003).

Trompetta's affidavit sufficiently states probable cause for witness tampering. Witness tampering is a violation of Conn. Gen. Stat. Section 53a-151(a), which states that:

> [a] person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding.

*Id.* Trompetta had, and his affidavit reflected, "reasonably trustworthy information of facts and circumstances" indicating that Gojcaj had attempted to induce Nanai to withhold testimony or testify falsely in the murder trial. *See Zalaski*, 723 F.3d at 390–91. Nanai's statement, which Trompetta recited verbatim in his affidavit, was that: (1) Gojcaj called Nanai to "talk about his upcoming trial"; (2) he had "read [Nanai's 2007 statement,] and . . . it was the only one that was damaging to him"; and (3) he "just wanted to make sure that if [Nanai] got called to testify, [Nanai]

wouldn't say anything that would be damaging to him." (ECF No. 55-4 at 6.) This information precisely tracks the elements of Section 52a-151(a). And this information was trustworthy because Nanai stated that he had personal knowledge of Gojcaj's demeanor, Nanai stated the same information to Trompetta two separate times, and phone records corroborated the contact between Gojcaj and Nanai. (*See id.* at 4–6.)

Neither is there a triable issue as to whether Trompetta omitted any material facts from his affidavit. In the second amended complaint, the plaintiff cites five omissions that were allegedly material to the probable cause determination: (1) that the witnesses that Gojcaj contacted were friends, acquaintances, or business associates, and that Gojcaj spoke to Nanai often between 2009 and 2010; (2) that Nanai gave his statement to Trompetta after consulting with his wife, a State Trooper, and negotiating favorable treatment with regard to felony drug charges pending against him; (3) that Nanai's veracity was questionable given his 'quid pro quo' deal with law enforcement; (4) that Trompetta did not include in the affidavit "that Nanai informed Trompetta that plaintiff did not ask him to change or alter testimony of any sort, in any way whatsoever"; and (5) that Trompetta omitted that "Nanai informed [him] that the tone of the conversation between [Nanai] and the plaintiff was friendly." (ECF No. 37 at ¶ 21.) The defendant does argues that none of these omissions were material to the probable cause determination. I agree.

The undisputed facts conclusively establish that the omissions were not material. I previously concluded, on a motion to dismiss, that the first three listed omissions were not material. (ECF No. 34 at 21.)[4] The fourth and the fifth alleged omissions are not material either, but they

---

[4] In that order, I concluded that "[t]hese were not material omissions. As to the first omission, Trompetta stated in his affidavit that Nanai and Gojcaj were "old friends" and that the conversation between them was "casual," involved "small talk," and Gojcaj never threatened him in any way. ([ECF No. 17] at ¶ 20(e).) This significantly mitigates the materiality of Trompetta's omission from the affidavit that Gojcaj and Nanai spoke casually between 2009 and 2010. While Trompetta did not state in the affidavit that the other witnesses Gojcaj contacted were friends, acquaintances, or business associates, that omission made little difference because the affidavit focused almost solely on Gojcaj's

9

are also not actually omissions. In his affidavit, Trompetta directly quoted Nanai as saying "Gojcaj then said [that] he just wanted to make sure that if I got called to testify, I wouldn't say anything that would be damaging to him. [Gojcaj] did not threaten me in any way, the conversation had a very casual tone. He made no outright requests of me. I felt like he was maybe trying to lead me but made no threats." (ECF No. 55-4 at 6.) Quoting the substance of Nanai's statement in this way would have given the reviewing judge adequate information to conclude that Nanai had not stated that Gojcaj had expressly asked him to change or alter testimony—Trompetta merely used Nanai's words to convey this information. Also, Trompetta did inform the reviewing judge that the tone of the conversation was friendly—again, to do so he used Nanai's own words (*Id.*) ("The call had the tone of an old friend calling to reach out. He offered his friendship and asked that I stay in touch, to say hello or visit next time I was in town.") As such, neither of these alleged omissions' substance was omitted from the affidavit, and so, necessarily, they were not material omissions.

In his Rule 56(a)(2) statement, Gojcaj identifies four "disputed issues of material fact": (1) that during his testimony at Gojcaj's tampering trial, Nanai did not "mention" that Gojcaj had raised "any concerns about possible future testimony [of Nanai] being 'damaging' to [Gojcaj]"; (2) that Nanai also testified during the tampering trial that he "expressly informed Trompetta that [Gojcaj] did not ask him to change his testimony in any way whatsoever"; (3) that "[o]n August

---

communications with Nanai. The statement in the affidavit mentioning other witnesses was that Gojcaj used the same phone he used to call Nanai to contact other witnesses. The omission regarding Gojcaj's relationship with other witnesses certainly did not threaten the propriety of the probable cause determinations. Further, while relevant to his credibility as an informant, the fact that Nanai was promised assistance in his pardon application in exchange for a written statement against Gojcaj is also insufficiently significant to threaten the probable cause determination. In the context of a criminal defendant challenging an arrest warrant, courts have considered similar omissions insufficient to justify a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). *See, e.g.*, *United States v. Milton*, 153 F.3d 891, 896 n.3 (8th Cir. 1998) (affirming denial of *Franks* hearing when affiant omitted the fact that the informant was paid for the information provided, "because these statements and omissions do not rob the affidavit of its ability to provide probable cause"); *United States v. Case*, No. 3:06–cr–210-WHB-JCS, 2008 WL 2002517, *5 (S.D. Miss. May 6, 2008) ("[W]hile the omitted financial information may have bearing on the credibility of the [informant], and thus may have affected the probable cause determination, there has been no showing that it would have precluded a finding of probable cause . . . ."). (ECF No. 34 at 21.)

10

30, 2010, Mr. Nanai made a sworn written statement at the insistence of [Trompetta;] Mr. Nanai did not volunteer to make a sworn written statement to Trompetta and felt uncomfortable doing so"; and (4) that "Mr. Nanai's sworn written statement was made at a time when he was asking and/or negotiating with Trompetta for a letter of recommendation in order to obtain a pardon for his previous conviction." (ECF No. 60-2 at 2–3, ¶¶ 1–4.)

But none of these establish genuine disputes of material fact. The first fact on this list, which describes testimony by Nanai at Gojcaj's tampering trial, is irrelevant, because Nanai's testimony at the later tampering trial was obviously to available to Trompetta when he prepared the arrest warrant affidavit. In any event, Nanai's simply not volunteering at the tampering trial that Gojcaj had expressed a concern about Nanai's trial testimony does not detract from—or even contradict—his statement to Trompetta, quoted in the warrant affidavit, that "Gojcaj then said th[at] he just wanted to make sure that if I got called to testify, I wouldn't say anything that would be damaging to him." (ECF No 55-4 at 6.) The second fact on the list is not disputed: the plaintiff's statements merely are alternate ways of summarizing the quotes in Trompetta's affidavit. (*Compare* ECF No. 60-2 at 2, ¶ 2 *with* ECF No. 55-4 at 6.) As noted in Trompetta's reply brief, these statements "serve[] only to confirm the accuracy of the information in Detective Trompetta's warrant affidavit" and "do[] no more than reiterate the accuracy of" these statements. (ECF No. 61 at 2.) The third and fourth facts cited are not material to the issue of probable cause. Whether Mr. Nanai volunteered to make a statement does not significantly affect his credibility or otherwise undermine the existence of probable cause, and, as stated above, whether Nanai was promised assistance in his pardon application is "insufficiently significant to threaten the probable cause determination." (ECF No. 34 at 21) (noting that other courts have considered similar omissions to justify a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) and citing cases).

Because I find that, as a matter of law, Trompetta had probable cause to believe that Gojcaj violated Conn. Gen. Stat. Section 53a-151(a), the claim for malicious prosecution fails, and it is not necessary to reach the defendant's qualified immunity and advice-of-counsel arguments.

### III. Conclusion

For the reasons stated above, I GRANT the defendant's motion for summary judgment on Count One, the sole remaining count of the second amended complaint. The Clerk is instructed to close the case.

IT IS SO ORDERED.

      /s/
Michael P. Shea, U.S.D.J.

Dated:    Hartford, Connecticut
           September 28, 2017